[Civ. No. 6127. Third Appellate District.—July 17, 1939.]

GEORGE T. WILLIAMS, Appellant, v. F. A. HEBBARD et al., Respondents.

Walter H. Duane for Appellant.

Roland J. White and William F. White for Respondents.

ALLEN, J., *pro tem.*—This action arose out of certain deeds of conveyance made to the respective parties by a common grantor. One Armistead owned lot 37 situate in sections 4, 8, 9 and 17, township 18 north, range 8 east, M. D. B. & M., in Yuba County. On November 10, 1932, Armistead deeded to plaintiff the northern portion of said lot 37 by the following description: "A strip of land commencing on the west boundary of the Great Eastern Mine, at a point where the right bank of Willow Creek crosses the eastern boundary of said Nevada Mining Company's Placer Mine and extending along said right bank a distance of 755 feet; thence at right angles to the left bank of said Willow Creek along said left bank of said Creek to the point where said left bank crosses the east boundary of said Nevada Mining Company's Placer Mine." On September 27, 1933, said Armistead deeded to defendant F. A. Hebbard the southern portion of said lot 37, by conveyance containing the following description: "Nevada Mining Co. Placer Mine, also described as Lot 37, situated in Sections 4, 8, 9 and 17, Township 18 North, R. 8 East, M. D. B. & M., according to the United States Plat of Survey of said mining claim, being particularly described in Patent, United States of America, to Josiah P. Brown, et als., dated March 19th, 1875, recorded May 5th, 1875 in Book I of Patents, page 343, excepting Parcel I (not material here), Parcel 2. 'A strip of land commencing at the west boundary of the Great Eastern Mine at a point where the right bank of Willow Creek crosses the eastern boundary of Nevada Mining Company's Placer Mine, and extending along said right bank 755 feet; thence at right angles to the left bank of Willow Creek; thence along the left bank of said Creek to a point where said left bank crosses the east boundary of Nevada Mining Company's Placer Mine, and thence to the point of beginning, being the property described in the deed from C. H. Armistead to George T. Williams, dated November 10th, 1932, recorded November 22nd, 1932, in Book 17, Official Records page 181.' " This

exception in the deed to Hebbard, being the same description as the land deeded by Armistead to Williams, November 10, 1932. There is no dispute as to the northern boundary of the parcel conveyed to Williams, and the court found that there is no ambiguity in the Williams' deed as locating a definite tract of land.

The undisputed evidence showed that the description for this Williams deed was obtained by a United States forest ranger named Meggers pacing from the north boundary of the tract to a point which he thought was 755 feet from the north boundary, and at which point he blazed a small, yellow pine tree. There is testimony that Armistead put a small iron stake and blazed a tree at this point shortly after Meggers had paced the land as indicating the south boundary of the tract he intended to convey to Williams. After the conveyance to Hebbard, it was found that the place where Hebbard is purported to have placed the iron stake was 792.20 feet from the north boundary, instead of being 755 feet, as set forth in the Williams deed. This was later ascertained by a survey of the land. Williams called on Armistead to make a correction, and on December 29, 1933, Williams deeded back to Armistead by quitclaim deed the land he received by his deed from said Armistead, and by the same description, and on the same day Armistead redeeded to Williams, a tract which, according to the surveyor's notes, placed the south boundary 792.20 feet from the north boundary of the tract, and covering a parcel of land 37.2 feet in width and extending across the property.

■ The first point made by appellant in his brief is as follows: Permanent and visible or ascertained boundaries or monuments are paramount over measurements where same are inconsistent. There is no question that this is a correct rule of law, but the first deed from Armistead to Williams does not make a call to any stake or monument. It apparently extended down 755 feet from the north boundary of lot No. 37. This rule is laid down in section 2077 of the Code of Civil Procedure and is a rule for construing descriptions in deeds, or other written instruments, and does not mean that a court can go outside of the deed to find a monument not mentioned in the instrument and make the description fit it. This is so apparent from the section itself and is so elementary that it requires no authority to support it.

■ If the description in the deed does not cover the land intended by both parties to be conveyed, because of a mutual mistake, reformation of the deed would have been the proper remedy. If Armistead's deed to plaintiff did not cover the land intended, plaintiff could have sued Armistead for a reformation, and could have compelled correction if Armistead was still the owner of the omitted land. Also, if the later deed from Armistead to Hebbard, through mutual mistake of Hebbard and Armistead, covered this disputed tract, that was not intended to be conveyed to Hebbard, then Armistead could have sued Hebbard for a reformation of the deed. This right to have the deed corrected would pass to the successors in interest to Armistead. Therefore, the deed from Armistead to Williams on December 29, 1933, conveyed to Williams all right, if any, Armistead had to the disputed tract, including the right to sue Hebbard for a reformation thereof on the ground of mutual mistake.

■ It is important to consider the pleadings in this case. Plaintiff sued to quiet title to the land according to the description in the second Armistead deed to him. Defendant was at that time under his deed of September 27, 1933, from Armistead, the holder of the record and legal title to the disputed parcel, and the most the plaintiff's second deed could give him was an equitable right to have the Armistead deed to Hebbard reformed, if there was a mutual mistake in its execution. It has been held in this state that a mere equitable right to have a deed reformed will not support an action to quiet title. (*Castro* v. *Barry,* 79 Cal. 443 [21 Pac. 946]; *Von Drachenfels* v. *Doolittle,* 77 Cal. 295 [19 Pac. 518]; *Fudickar* v. *West Riverside Irr. Dist.,* 109 Cal. 29 [41 Pac. 1024]; *Chapman* v. *Hicks,* 41 Cal. App. 158–165 [182 Pac. 336].) It would appear that plaintiff mistook his remedy when he filed complaint to quiet title.

■ Defendant denies plaintiff's title to the disputed parcel and alleges the defendant is the owner of said disputed tract in fee, and by way of cross-complaint sued to quiet defendant's title to all the land covered by the Armistead deed to him, including the disputed tract, and alleges that the plaintiff claims an adverse claim thereto, and avers that said plaintiff's claim is without right. Plaintiff answers this cross-complaint and sets up his adverse claim by way of answer to the cross-complaint, alleging there was a mutual

mistake in the first Armistead deed to him and also a mutual mistake in the Armistead deed to Hebbard. Plaintiff also alleges that Hebbard had knowledge of plaintiff's ownership and possession of said tract, and that the boundaries between the tract that Hebbard was buying and the Williams' property was pointed out to Hebbard at the time before he purchased. The plaintiff, as cross-defendant had a right to set up any equitable defense that he had as an adverse claim as against cross-complainant's action to quiet title. Therefore, the mutual mistake was properly brought in issue by the answer to the cross-complaint. (Sec. 738, Code Civ. Proc.; *Pennie* v. *Hildreth,* 81 Cal. 127 [22 Pac. 398]; Bancroft's Code Pleading, vol. 4, p. 3904; *Whitney* v. *Sherman,* 178 Cal. 435 [173 Pac. 931]; *Milliken* v. *Valencia,* 47 Cal. App. 16 [189 Pac. 1049]; Bancroft's Code Pleading, Practice and Remedies, Ten-year Supp. (vol. 2), p. 1058.)

The court found against plaintiff on his complaint, and found that defendant and cross-complainant was the owner of the land described in his deed, including the disputed tract, and found that plaintiff and cross-defendant had no right, title, claim or interest therein. There is sufficient evidence to support these findings, and there is no claim by appellant that the evidence is insufficient to support the findings. It is true the court did not make a particular finding on the allegations in the answer to cross-complaint, that the boundaries of plaintiff's land were pointed out to defendant when Armistead sold to him, and that the defendant had knowledge of plaintiff's possession. The evidence on this point was conflicting. As the court did find, however, that defendant owned this disputed tract, and that plaintiff had no right, title, claim or interest therein, the finding being against plaintiff and cross-defendant on his complaint, and in favor of cross-complainant, it was not necessary for the court to find on each probative fact set forth in the answer to the cross-complaint in support of his adverse claim. The court did find on the ultimate fact that the cross-defendant had no right, title, claim or interest in said particular tract. (*Wells* v. *B. F. Porter Estate,* 205 Cal. 776 [272 Pac. 1039]; *Aries* v. *Squires,* 105 Cal. App. 414 [287 Pac. 515]; *Reiniger* v. *Hassell,* 216 Cal. 209 [13 Pac. (2d) 737]; *City of Signal Hill* v. *Wyse,* 9 Cal. App. (2d) 641 [50 Pac. (2d) 1076].)

It is therefore apparent that the judgment in this case should be affirmed. It is so ordered.

Thompson, J., and Pullen, P. J., concurred.