[Civ. No. 20748.   Second Dist., Div. Two.   July 7, 1955.]

BRUNZELL CONSTRUCTION COMPANY, INC. (a Corporation), Appellant, v. G. J. WEISBROD, INC. (a Corporation), Respondent.

Preston D. Orem for Appellant.

Mitchell & Hibbert for Respondent.

FOX, J.—Plaintiff appeals from the judgment in an action to recover damages for an alleged breach of contract.

Plaintiff and defendant are domestic corporations, the former licensed to engage in building construction and the latter licensed as specialty contractors in the business of steel construction. The individuals primarily concerned as protagonists in the matter before us are Everett S. M. Brunzell, secretary of plaintiff corporation, John C. Ringer, an employee of plaintiff, Gilbert J. Weisbrod, president and general manager of defendant corporation, and Leonard W. Klamm, its sales manager.

Plaintiff sued defendant and its president[1] for damages resulting from an asserted breach of a subcontract to do the steel construction on a contract with a school district. Defendant answered with a general denial and with allegations that a mistake was made in executing the agreement as prepared by plaintiff, in that steel decking had not been excluded therefrom; that such mistake was known by plaintiff; that notwithstanding such knowledge on the part of plaintiff it attempted to take advantage thereof by compelling defendant to carry out the terms of the subcontract, knowing that by mistake, the steel decking had not been excluded from such writing; and that upon discovery of the mistake, plaintiff was notified of defendant's election to rescind.

The Burbank Unified School District had announced it would accept bids, beginning at 2 p. m., July 2, 1953, for the construction of ''Auditoriums and Connecting Shelter'' at the John Muir Junior High School. In anticipation of bidding for the job, plaintiff solicited bids from subcontractors for various phases of the work several days before bidding commenced. Included among the bidding items was the steel work, which consisted primarily of a basic bid and a bid known as Alternate No. 1. This latter item, in general, comprised the connecting covered arcade, for the construction of which the specifications required among other items steel decking made by the Detroit Steel Products Company.

---

[1]The case against Weisbrod as an individual defendant was dismissed.

Mr. Brunzell knew that the Walter Steyer Company was the sole local distributor for Detroit Steel Products. The bid specifications relative to steel were divided into three sections —section E, Structural Steel, section EE, Reinforcing Steel, and section EEE, Miscellaneous Iron and Steel.

Mr. Brunzell testified that plaintiff received four bids for the above steel work—all of them over the telephone—from the Apex Steel Company, the Kyle Company, Walter Steyer Company and from defendant prior to submitting its own bid. Mr. Klamm, representing defendant, testified he made his bid over the 'phone in the following language: "We have a figure for the structural steel and miscellaneous iron, *omitting decking*, on the auditorium building, John Muir Junior High School, Burbank. The sections covered are Section E, Structural Steel, and Section EEE, Miscellaneous Iron and Steel omitting decking. Our base price is $30,000. Alternate No. 1 $7,700.00." (Emphasis added.) Defendant's total bid, therefore, excluding decking, was $37,700. The record shows that Apex Steel bid $39,800, excluding decking, for the same work, while the Kyle bid for both the base proposal and Alternate No. 1, including decking, was $51,778. Meanwhile, plaintiff had obtained a bid from the Steyer Company for steel decking alone in the amount of $9,300.

Plaintiff was the successful bidder for the general contract. In compliance with the provisions of sections 4100 to 4106 of the Government Code,[2] plaintiff, in submitting its

[2]The following sections are of interest here:

*Section 4102*: "Any officer, department, board or commission taking bids for the construction of any public work or improvement shall provide in the specifications prepared for the work or improvement or in the general conditions under which bids will be received for the doing of the work incident to the public work or improvement that any person making a bid or offer to perform the work, shall, in his bid or offer, set forth:

"(a) The name and the location of the place of business of *each subcontractor who will perform work or labor or render service to the general contractor* in or about the construction of the work or improvement in an amount in excess of one-half ($\frac{1}{2}$) of one per cent (1%) of the general contractor's total bid.

"(b) *The portion of the work which will be done by each such subcontractor under this act.*"

*Section 4103*: "If a general contractor fails to specify a subcontractor for any portion of the work to be performed under the contract in excess of one-half ($\frac{1}{2}$) of one percent (1%) of the general contractor's total bid, *he agrees to* perform that portion himself."

*Section 4104*: "No general contractor whose bid is accepted shall, without the consent of the awarding authority, either:

"(a) Substitute any person as subcontractor in place of the subcontractor designated in the original bid.

"(b) Permit any such subcontract to be assigned or transferred or

bid, set forth the names of the subcontractors who were to render service for it in performance of the proposed contract. In addition to defendant's name, there was listed the following: "Steel Deck: Walter Steyer." Mr. Brunzell stated this was written in the school bid under his direction. Mr. Gerd H. Schulte, a registered structural engineer employed by the Burbank United School District, testified that when the Steyer Company was listed as the subcontractor for the steel decking on the plaintiff's bid, it was understood that the Steyer Company, and not the defendant, would do the decking. If the installation of the decking by defendant were contemplated, he asserted there would be no need to set out the Steyer Company by name, since the subcontractor of a subcontractor need not be listed to comply with the law.

On July 7, 1953, Mr. Klamm signed and sent to plaintiff a letter entitled "Confirmation," expressive of defendant's willingness to furnish for the total sum of $37,700 the following: "1. Structural steel as defined in Section E, of specifications. 2. Miscellaneous iron as defined in Section EEE of specifications. 3. Labor for the erection of structural steel, decking, railing, ladders and wire work. Balance of miscellaneous iron items are to be furnished only F.O.B. job." Section EEE of the specifications included, as item 21, "Metal Decking and Siding." On July 9, 1953, the Steyer Company wrote plaintiff confirming its bid for the steel decking.

After receiving defendant's letter of "Confirmation" Mr. Brunzell prepared a printed form of "Subcontract Agreement." In an available space, in paragraph one, there was

---

allow it to be performed by anyone other than the original subcontractor listed in the bid.

"(c) Sublet or subcontract any portion of the work in excess of one-half (½) of one per cent (1%) of the general contractor's total bid as to which his original bid did not designate a subcontractor.

"(d) The awarding authority may consent to the susbtitution of another person as a subcontractor, when the subcontractor named in the bid after having had a reasonable opportunity to do so, fails or refuses to execute a written contract, when said written contract, based upon the general terms, conditions, plans and specifications for the project involved, or the terms of such subcontractor's written bid, is presented to him by the contractor."

Section 4106: "A general contractor violating any of the provisions of this chapter violates his contract and the awarding authority may cancel the contract. After any such violation, the general contractor shall be penalized to the extent of twenty per cent (20%) of the amount of the subcontract involved. Funds recovered through the application of this penalty shall be paid to the State Treasurer who will deposit them in the General Fund."

typewritten the provision that defendant would perform the work previously quoted in its "Confirmation." Klamm thereupon called at Brunzell's office on July 9 to pick up the agreement. While there, Klamm, Brunzell and Ringer discussed all phases of the work to be done by defendant. Brunzell stated to Klamm that the school board wanted the portion of the job involving the connecting arcades, which included the decking, done immediately. Klamm replied: "Furnishing the structural steel for this portion of the work is relatively simple. Completion will be dependent upon the delivery of the metal deck by Mr. Steyer. As soon as I return to my office I'll try to contact Mr. Steyer to learn what deliveries may be expected on the metal deck, since there's no reason to rush my work if we have to wait for the deck."

After taking the contract back to defendant's office, Klamm checked it and asked that paragraph 13, relating to a surety bond, be deleted. This was done and the contract was signed by the parties. Klamm testified that on July 13, 1953, following a conversation with Mr. Steyer, he realized for the first time that plaintiff purportedly understood that defendant was to furnish the steel decking. He thereupon telephoned plaintiff and spoke to Ringer, telling him: "I just discovered that neither my confirming proposal nor your subcontract agreement excluded metal decking. I felt certain that you intended metal decking to be excluded. Had you not intended metal decking to be excluded my bid would have been ridiculously low. And, furthermore, I would not have bid on the item of metal decking since it was a proprietary item or material to be furnished by Steyer Company." Ringer replied that Brunzell was out of town for a few days and the matter would be taken up upon his return. On the same day, Klamm sent plaintiff the following letter: "We spoke with the Walter E. Steyer Co., today, to learn of the date delivery might be expected of the metal decking for the covered walks, only to learn that a contract had not been awarded to them, as yet. It was then recalled that our confirming proposal on this project did not exclude the metal decking, as it should to conform with verbal bid given prior to bid opening. Obviously this was an error by our office and apparently escaped the attention of your office. We would greatly appreciate your cooperation in correcting your contract to us to provide for the deletion of all metal decking."

On July 15, defendant received its copy of the signed Subcontract Agreement. Klamm amended it by striking out

therefrom the word "decking," and by typing in the words "omitting steel decking." He returned it to plaintiff with a request that plaintiff's copy be amended to conform therewith and that both be initialled by the parties. Brunzell declined to accede. Defendant then made known its refusal to perform under the contract as executed. Brunzell subsequently obtained other bids for the work in question, including the decking. The work was awarded to Apex as lowest bidder at $49,000, and Apex's substitution in place of defendant was approved by the school district.

In this action, plaintiff sought damages in the sum of $11,300, the difference between the $37,700 bid by defendant and the contract for $49,000 entered into with Apex for allegedly the same work. In entering judgment for defendant, the court made findings conforming to the allegations in the answer. So far as is here germane, the court found that in making its oral bid, defendant had excluded the decking and that the parties understood that if defendant was awarded the contract it would not be required to furnish or install decking but that this would be done by the Steyer Company; that in confirming its oral bid defendant mistakenly and inadvertently failed to exclude the decking; that when plaintiff received the letter of confirmation, it was fully aware of defendant's mistake in not excluding decking and knowingly sought to take advantage of that mistake by preparing a "Subcontract Agreement," later executed by the parties, which did not exclude decking, and was contrary to the oral bid; "that there was never any meeting of the minds of the parties agreeing to the provisions of the purported subcontract agreement"; that there was never any agreement requiring defendant to furnish and install the decking, plaintiff having secured defendant's signature to the subcontract knowing it had never bid on the decking; that defendant made numerous requests of plaintiff to correct the mistake in accordance with its oral bid, which were refused; and that upon discovering its mistake, with due diligence, defendant notified plaintiff of its election to rescind.

Plaintiff's fundamental contention is that "the court erred in ruling that [defendant] was entitled to rescind the subcontract agreement by reason of the discovery of certain alleged mistakes." Such contention is thoroughly refuted by the case of *M. F. Kemper Const. Co.* v. *City of Los Angeles*, 37 Cal.2d 696 [235 P.2d 7]. There, plaintiff Kemper sued to cancel a bid it had submitted on a public construction

project and to obtain a discharge of its bid bond. In submitting its bid, plaintiff inadvertently omitted an item amounting to $301,769 which had figured in its computations. The company discovered its error several hours after the bids were opened and sought to withdraw its bid. The Board of Public Works refused to permit this and passed a resolution accepting the erroneous bid. Section 386(d) of the City Charter of Los Angeles provides: "After bids have been opened and declared, except with the consent of the officer, board or City Council having jurisdiction over the bidding, no bid shall be withdrawn, but the same shall be subject to acceptance by the city for a period of three months. . . ." The trial court found, in part, that the bid had been submitted as the result of an honest mistake of a material character, that plaintiff was not negligent, that it had acted promptly to rescind, and that the board had accepted with knowledge of the error. It concluded that it would be unconscionable to require plaintiff to perform for the amount of the bid and that the city suffered no prejudice though it had to award the contract to the next lowest bidder.

In affirming the judgment, the Supreme Court expounded the law directly apposite to the case before us: "The city contends that a party is entitled to relief on that ground [rescission] only where the mistake is mutual, and it points to the fact that the mistake in the bid submitted was wholly unilateral. . . . However, the city had actual notice of the error in the estimates before it attempted to accept the bid, and knowledge by one party that the other is acting under mistake is treated as equivalent to mutual mistake for purposes of rescission. . . . Relief from mistaken bids is consistently allowed where one party knows or has reason to know of the other's error and the requirements for rescission are fulfilled. . . .

"Rescission may be had for mistake of fact if the mistake is material to the contract and was not the result of neglect of a legal duty, if enforcement of the contract as made would be unconsionable, and if the other party can be placed in statu quo. . . . In addition, the party seeking relief must give prompt notice of his election to rescind and must restore or offer to restore to the other party everything of value which he has received under the contract. . . .

"Omission of the $301,769 item from the company's bid was, of course, a material mistake. The city claims that the company is barred from relief because it was negligent in

preparing the estimates, but even if we assume that the error was due to some carelessness, it does not follow that the company is without remedy. Civil Code, section 1577, which defines mistake of fact for which relief may be allowed, describes it as one not caused by 'the neglect of a legal duty' on the part of the person making the mistake. It has been recognized numerous times that not all carelessness constitutes a 'neglect of legal duty' within the meaning of the section. . . . On facts very similar to those in the present case, courts of other jurisdictions have stated that there was no culpable negligence and have granted relief from erroneous bids. . . . The type of error here involved is one which will sometimes occur in the conduct of reasonable and cautious businessmen, and, under all the circumstances, we cannot say as a matter of law that it constituted a neglect of legal duty such as would bar the right to equitable relief.

''The evidence clearly supports the conclusion that it would be unconscionable to hold the company to its bid at the mistaken figure. The city had knowledge before the bid was accepted that the company had made a clerical error which resulted in the omission of an item amounting to nearly one third of the amount intended to be bid, and, under all the circumstances, it appears that it would be unjust and unfair to permit the city to take advantage of the company's mistake.''

The instant case falls squarely within the equitable principles announced in the Kemper case. The evidence shows that when defendant made its oral bid through Klamm, it specifically excluded the decking in its bid of $37,700. That plaintiff fully knew and comprehended this is reasonably to be inferred from a miscellany of evidentiary matters appearing in the record. First and foremost is the fact that in submitting its own bid, and in conformity with the requirement of section 4102 of the Government Code, plaintiff listed Walter Steyer, who had bid $9,300 for the decking job, as the subcontractor for the steel decking. Secondly, as an experienced bidder on public projects, Brunzell must have clearly known that defendant's bid would be ''in line'' with other bids only if it excluded decking. This appears from the other bids—Apex Steel Company having bid $39,800 for the job without decking ($2,100 more than defendant's bid), and the Kyle Construction Company having bid $51,778 including decking (or $4,778 more than the combined bid of plaintiff and Steyer). Thirdly, after Brunzell received the confirming letter and before the contract was signed, Klamm

and Brunzell discussed the arcade work, the only place in which the specifications called for decking. Brunzell emphasized the need for speed in constructing the arcade. Klamm replied that "furnishing the structural steel for this portion of the work is relatively simple. Completion will be dependent upon delivery of the metal deck by Mr. Steyer"—an indication that the parties recognized the decking would be Steyer's responsibility.

From all the foregoing evidence, the court was justified in finding that defendant had made a mistake in its letter of confirmation, that plaintiff knew that such a mistake had been made, that it took unfair advantage of this mistake to incorporate decking into the contract though the bid price was made exclusive of decking, and that defendant assented to the contract under an honest misapprehension which plaintiff was trying to exploit. Upon discovering the true facts a few days after the contract was signed and while it was still executory, defendant gave prompt notice of rescission "and no offer of restoration was necessary because it had received nothing of value which it could restore." (*M. F. Kemper Const. Co.* v. *City of Los Angeles, supra,* p. 703.) That some element of carelessness not amounting to "the neglect of a legal duty" permeated defendant's mistake, will not of itself bar its right to relief where the mistake in question does not stem from an original error in judgment. (*M. K. Kemper Const. Co.* v. *City of Los Angeles, supra,* p. 703-704; *Klose* v. *Sequoia Union High Sch. Dist.,* 118 Cal.App.2d 636, 641-642 [258 P.2d 515].)

It follows that the court was therefore clearly correct in its implied conclusion that plaintiff could not enforce the contract as made. When a contract is still executory, and the parties can be put *in statu quo,* one party to the contract will not be permitted to obtain an unconscionable advantage through enforcement of the contract where he knows of the other's mistake, where such mistake is material and not the result of neglect of a legal duty or an error in judgment, and the requirements for rescission are fulfilled. (*M. F. Kemper Const. Co.* v. *City of Los Angeles, supra,* p. 701.) That a mistake of which plaintiff was aware, and through which defendant seemingly agreed to perform a contract for a price of $37,700 calling for work reasonably worth at least $47,000, was of so essential and fundamental a character that the minds of the parties never met on the contract as executed, would scarcely seem to require dis-

cussion. And where, as here, one of the parties, through excusable mistake or neglect and not because of an error of judgment, has named a consideration that is out of all proportion to the value of the subject of negotiations, and the other party, cognizant of such mistake, takes inequitable advantage of it, the latter cannot under such conditions claim an enforceable contract.

▉ Plaintiff also attacks as lacking evidentiary support the findings that when it received the letter of confirmation it was fully aware of defendant's mistake in not excluding decking and that it secured defendant's signature to the subcontract knowing defendant had never bid on the decking. Virtually its entire reply brief is devoted to arguing that this finding was grounded on mere speculation and by improperly basing inference on inference. Plaintiff's claim is refuted both by the state of the record and the controlling principles of law. We need advert to no more of the record than the fact that defendant's oral bid to plaintiff specifically excluded decking and the further fact that plaintiff's contract bid listed Steyer as the decking contractor, giving rise to the reasonable inference that it knew defendant had not included decking in its bid. So far as concerns the law on the "inference" problem plaintiff advances, it is accurately stated in *Vaccarezza* v. *Sanguinetti,* 71 Cal.App.2d 687, 698 [163 P.2d 470] (hearing den.) and *Ybarra* v. *Spangard,* 93 Cal. App.2d 43, 47 [208 P.2d 445] (hearing den.). ▉ "In a civil case, if the first inference is a reasonably probable one it may be used as a basis for a succeeding inference." In *People* v. *Chessman,* 38 Cal.2d 166, 187 [238 P.2d 1001], the rationale of the Vaccarezza case is followed and the following language quoted with approval: "The statement appearing in some cases that an inference cannot be based upon an inference, usually without citation and certainly without adequate discussion, does not and cannot mean that an inference cannot be based upon a fact which is itself based upon circumstantial evidence. . . . The true rule is and should be that an inference cannot be based on an inference that is too remote or conjectural." The findings here complained of were based not only on direct evidence of the original oral bid, but on circumstantial evidence of a highly persuasive character and logical inferences derived therefrom.

▉ Finally, plaintiff assigns as error the admission over its objection of testimony by Klamm purporting to explain why his confirming letter mistakenly failed to exclude the

decking work. Such testimony was properly admitted to clarify the character of the mistake by showing that it did not arise out of neglect of legal duty or from an error of judgment that might disentitle defendant to the right to rescind.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.