[L. A. No. 23369. In Bank. June 1, 1956.]

MORRIS S. VAN METER, Appellant, v. BENT CON-
 STRUCTION COMPANY (a Partnership) et al.,
 Respondents.

Higgs, Fletcher & Mack and Ferdinand T. Fletcher for Appellant.

Procopio, Price, Cory & Schwartz, Hill, Farrer & Burrill, Alec L. Cory and Stanley S. Burrill for Respondents.

GIBSON, C. J.—Defendants contracted with the city of San Diego to construct a dam and remove brush and trees from the reservoir basin, and thereafter they entered into a subcontract with plaintiff for clearance of the basin, representing to him that the area to be cleared had been marked with flags. Plaintiff later discovered that the flagged area covered only a part of the reservoir basin, and he notified defendants that unless some adjustment was made he would not proceed with the work. It was then agreed that plaintiff should clear the entire basin without prejudice to his rights under the subcontract. Upon completion of the work he brought this action seeking, in separate counts, a declaration of rights, reformation of the subcontract, recovery of the reasonable value of services performed, and damages for false representations.

Certain issues were submitted to a jury on special interrogatories, and its answers were supplemented by findings of the court. It was found that defendants made false representations believing them to be true and that plaintiff relied on the misrepresentations and failed to use reasonable care in ascertaining the extent of the area to be cleared. The court concluded that, because the fraud perpetrated by defendants was not wilful, plaintiff's negligence precluded him from obtaining any relief. He has appealed from the ensuing judgment contending that the finding that he was negligent is not supported by the evidence and that the judgment is not supported by the findings.[1]

The provisions of the general contract between the city and defendants relating to clearance of the reservoir basin are found in section H of Specification Number 9—Sutherland Dam, under the designation "H-01 Clearing." Insofar as material here, the section states that "The reservoir basin shall be cleared below elevation 2073. The contour 2073 will be flagged by City forces during the bidding period and the Bidder shall make visual observation before submitting bid. The area of the basin is about one square mile, horizontal measurement." The contract, which is in book form, consists of 110 typewritten pages, including the table of contents, and 27 folded pages at the back of the book containing drawings and maps. One of the maps is entitled "Sutherland Dam Area to be Cleared and City Camp." This map, which is not referred to in the table of contents or in section H,

---

[1]Judgment was also entered in favor of the city on a cross-complaint filed against it by defendants. No appeal was taken therefrom.

shows elevation contour 2073 enclosing an area irregular in shape consisting of two basins joined by a narrow neck. The Santa Ysabel Creek runs west through the upper basin, turns at the narrow neck and flows north through the lower basin. The upper basin, which is long and narrow, contains approximately 220 acres. The lower basin covers approximately 420 acres and is nearly as broad as it is long. The dam site is shown on the map as being located at the north end of the lower basin, and the map contains a notation on the lower basin area: "Contractor shall clear area below contour 2073 about (1) sq. mile."

Mr. Daley, a representative of defendants, asked plaintiff to submit a bid for removing trees and brush and showed him a copy of the contract, calling his attention to section H. Together they read the provisions dealing with the clearance of the reservoir basin, and Daley told plaintiff that the area to be cleared had been flagged by the city and that it was the area on which he was to bid. Plaintiff kept the copy of the general contract and marked with a paper clip the page containing section H. Daley made no reference to the map, which, as we have seen, was not mentioned in section H or listed in the table of contents, and plaintiff did not see it until after he had commenced work. When plaintiff examined the area prior to making his bid he found that flags had been placed in the lower basin along contour 2073. He looked for additional flags but found none, and it is undisputed that no flags had then been placed in the upper basin.

Plaintiff submitted a bid in the sum of $29,750, informing defendants that he was bidding on the flagged area, and he was again told by defendants that the area to be cleared was that flagged by the city. The bid was accepted, and plaintiff executed the subcontract which states that he is familiar with the terms of the general contract and that he "agrees to perform fully and completely all that portion of the work required to be done by Contractor under the General Contract which is hereinbelow particularly described as follows: All that work named in Specification Number 9, Sutherland Dam Section H—Clearing Reservoir Basin, H-01 Clearing Bid Item No. 76."

Plaintiff commenced work about August 1, 1952, and early in September he was informed by a city employee that a larger area than the one flagged was to be cleared. Shortly thereafter the city placed flags in the upper basin. Plaintiff notified defendants that he had learned that all of the area had

not been flagged during the bidding period as required by section H of the general contract, that he had made his bid on the assumption that the flags marked the boundary of the area to be cleared, and that unless defendants made an adjustment he would stop work on October 1. The parties then agreed that plaintiff should complete the clearance of the entire reservoir basin without prejudice to their rights under the subcontract.

Evidence as to the amount of damages was deferred until determination of liability, and only a prima facie case as to costs and values was presented. Defendants' bid for constructing the dam and clearing the reservoir basin was $2,896,485, which included an estimated profit of $267,707.66. In their bid defendants listed $116,500 for clearing the reservoir area, but their accountant testified that $89,350 was included in that item to cover part of the general overhead expense of the project. Plaintiff's books showed that the cost of removing the trees and brush from the flagged area was $25,240.25 and that his cost of clearing the remaining portion of the reservoir basin which, although smaller, was more heavily wooded, was $50,085.25.

The findings may be summarized as follows: The general contract with the city required defendants to clear all of the reservoir basin below the elevation of 2,073 feet, and by the terms of the subcontract plaintiff undertook to perform that part of the general contract providing for clearing the reservoir basin. Plaintiff has completed the work required of him and has earned the sum of $29,750 specified in the subcontract. When he entered into the subcontract he believed in good faith that the area required to be cleared was that portion of the reservoir basin below contour elevation 2073 which had been flagged by the city. Prior to the execution of the subcontract, defendants made untrue representations to plaintiff with regard to the extent of the area to be cleared. Defendants believed that flags had been placed around the entire contour, and they did not know that their representations were false, but defendants made the representations as positive assertions in a manner not warranted by their information. Plaintiff believed the representations, relied upon them in entering into the subcontract and was thereby caused to believe that by its terms he was to clear that portion of the reservoir basin lying below the flags which were then on the ground. A contractor of ordinary skill in the exercise of ordinary care should have known that the

contract required that trees and brush be removed from both basins, and, had plaintiff made the inquiries reasonably suggested by the contract and an inspection of the premises, he would have discovered that it was intended that the entire reservoir basin be cleared. Plaintiff, who was an experienced contractor, failed to use reasonable care to ascertain the extent of the area involved.

The court concluded that because the fraud perpetrated upon plaintiff was not wilful and since plaintiff did not use reasonable care in ascertaining the extent of the work to be performed under the subcontract, he was entitled to no relief and that ''The findings heretofore made are determinative of all the issues involved in this action and that it becomes unnecessary to make any further findings of fact.''

In view of the positive misrepresentations made by defendants, the trier of fact could have found that plaintiff was not negligent, but we cannot say that there is no substantial evidence to support the finding that he failed to use ordinary care to ascertain the extent of the area to be cleared. All reasonable inferences must be drawn in favor of the findings, and it may be inferred that, although section H does not refer to a map, plaintiff was negligent in not examining the maps and drawings attached to the general contract to see whether one of them contained a description of the area to be cleared and also in failing to ascertain whether the flagged area covered one square mile.

In our opinion, however, the court erred in concluding that since the fraud perpetrated by defendants was not wilful, plaintiff's negligence precluded him from obtaining any relief and that it was unnecessary to make further findings. It is the general rule that the negligence of a plaintiff is not a defense where the defendant with intent to deceive has falsely represented as a fact something which he does not believe to be true. (*Hefferan* v. *Freebairn*, 34 Cal.2d 715, 718-721 [214 P.2d 386]; *Seeger* v. *Odell*, 18 Cal.2d 409, 414 et seq. [115 P.2d 977, 136 A.L.R. 1291]; see *California Trust Co.* v. *Cohn*, 214 Cal. 619, 626 et seq. [7 P.2d 297].) Although defendants were guilty of fraud as defined in subdivision 2 of section 1572 of the Civil Code, their fraud was not wilful since their representations were believed by them to be true and were not made with intent to deceive.[2] Defendants

---

[2] Section 1572 of the Civil Code provides: ''Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive

594

contend that their conduct, though characterized by the statute as fraudulent, was merely negligent and that, by analogy to the rule in tort cases, plaintiff's contributory negligence is as a matter of law a complete defense. There is an element of carelessness in nearly every case of mistake, and it is obvious that the unqualified application of the principle urged by defendants would result in the virtual destruction of the equitable remedies for relief from mistake.

 It is settled that, even in the absence of any misrepresentation, the negligent failure of a party to know or discover facts as to which both parties are under a mistake does not preclude rescission or reformation because of the mistake. (*National Auto. & Cas. Ins. Co.* v. *Industrial Acc. Com.,* 34 Cal.2d 20, 24-26 [206 P.2d 841]; *Los Angeles etc. R. R. Co.* v. *New Liverpool Salt Co.,* 150 Cal. 21, 25-28 [87 P. 1029]; *Mills* v. *Schulba,* 95 Cal.App.2d 559, 564-565 [213 P.2d 408]; *Hanlon* v. *Western Loan & Bldg. Co.,* 46 Cal.App.2d 580, 597-598 [116 P.2d 465]; see Rest., Contracts, § 508; McClintock on Equity (1948), pp. 246-247, 265-266; 3 Pomeroy, Equity Jurisprudence (5th ed., 1941), § 856b, pp. 340-341; 12 Am.Jur., pp. 624-625; *cf. M. F. Kemper Const. Co.* v. *City of Los Angeles,* 37 Cal.2d 696, 702 [235 P.2d 7]; *Brunzell Const. Co.* v. *G. J. Weisbrod, Inc.,* 134 Cal.App.2d 278, 286 [285 P.2d 989].) Some cases have said that a plaintiff will not be denied rescission or reformation because of lack of care unless his conduct amounts to gross negligence or the neglect of a legal duty. (*Los Angeles etc. R. R. Co.* v. *New Liverpool Salt Co.,* 150 Cal. 21, 28 [87 P. 1029]; *Hanlon* v. *Western Loan & Bldg. Co.,* 46 Cal.App.2d 580, 597-598 [116 P.2d 465].) These terms are perhaps unfortunate and have caused some confusion. The theory that there are degrees of negligence has been generally criticized by legal writers, but a distinction has been made in this state between ordinary and gross negligence. (See *Donnelly* v. *Southern Pac. Co.,* 18 Cal.2d 863, 871 [118 P.2d 465].) Gross negligence has been said to mean the want of even scant care or an extreme departure from the ordinary standard of conduct.

another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; 3. The suppression of that which is true, by one having knowledge or belief of the fact; 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive.''

(See *Kastel* v. *Stieber*, 215 Cal. 37, 47-51 [8 P.2d 474] ; Prosser on Torts (1941), p. 260.) █ A breach of legal duty may, of course, consist of either ordinary negligence or gross negligence (Harper on Torts (1933), p. 170), but it has been held that ordinary negligence does not constitute the neglect of a legal duty as that term is used in section 1577 of the Civil Code[3] (*Los Angeles etc. R. R. Co.* v. *New Liverpool Salt Co.,* 150 Cal. 21, 25-28 [87 P. 1029] ; *Hanlon* v. *Western Loan & Bldg. Co.,* 46 Cal.App.2d 580, 597-598 [116 P.2d 465]).

There is even more reason for not barring a plaintiff from equitable relief where his negligence is due in part to his reliance in good faith upon the false representations of a defendant, although the statements were not made with intent to deceive. (*Cf. Shearer* v. *Cooper,* 21 Cal.2d 695, 703-704 [134 P.2d 764] ; *Fleury* v. *Ramacciotti,* 8 Cal.2d 660, 662 [67 P.2d 339].) █ A defendant who misrepresents the facts and induces the plaintiff to rely on his statements should not be heard in an equitable action to assert that the reliance was negligent unless plaintiff's conduct, in the light of his intelligence and information, is preposterous or irrational. (5 Williston on Contracts (rev. ed.) § 1512, pp. 4222, 4223.)

█ The court did not determine that plaintiff's conduct was preposterous or irrational or that it amounted to gross negligence or the neglect of a legal duty, and we are of the opinion that any such determination could not be supported in view of the findings that were made. The subcontract required plaintiff to perform the work described in section H of the general contract. The only provision in section H which describes the area from which trees and brush are to be removed states that the reservoir basin shall be cleared below elevation 2073, that contour 2073 will be flagged by the city during the bidding period, that the area of the basin is about one square mile and that the bidder shall make a visual observation before submitting a bid. When plaintiff made his inspection he discovered that the area flagged by the city was approximately coextensive with the lower basin, at the end of which the dam was to be located. Defendants,

---

[3]Section 1577 of the Civil Code provides: ''Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or, 2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed.''

who as general contractors were in a position to know the facts, represented to plaintiff, both before and after he inspected the premises, that the area to be cleared was that which had been flagged by the city. Plaintiff's failure to make a more thorough investigation of the work required by section H was no doubt due in a large part to the positive representations made by defendants and to the circumstances under which they were made.

The court erred in concluding that, it having been found that plaintiff was negligent, he was precluded from obtaining any relief and that it was therefore unnecessary to make other findings. In the absence of findings upon all material issues we cannot determine what if any relief plaintiff would be entitled to receive.

The judgment is reversed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.