Filed 5/17/22  Rivera v. Mondragon CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARIO RIVERA et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> YURI MONDRAGON, <br><br> Defendant and Appellant. | F080180 <br><br> (Super. Ct. No. BCV-16-102682) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Law Offices of Gregory W. Patterson and Gregory W. Patterson for Defendant and Appellant.

Law Office of Thomas C. Fallgatter and Thomas C. Fallgatter; Ryan T. Fallgatter; Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, Catherine E. Bennett and James R. Harvey for Plaintiffs and Respondents.

-ooOoo-

Defendant and appellant Yuri Mondragon appeals from an August 12, 2019 judgment of the Kern County Superior Court entered in favor of plaintiffs and respondents Mario and Yolanda Rivera.[1]  For the reasons set forth below, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In the 1980's, the Riveras acquired rental property on the southeast corner of Martin Avenue and Tulare Street in Lost Hills, California.  The land is comprised of eight contiguous vertical lots.  A single-family residence and other related buildings (14830 Martin Avenue) are located across the first five lots (Assessor's Parcel No. 069-063-19).  In this opinion, we identify these five lots as the Martin Avenue Property.  One mobile home (21187 Tulare Street) is located on the sixth lot (Assessor's Parcel No. 069-063-18), another mobile home (21189 Tulare Street) is located on the seventh lot (Assessor's Parcel No. 069-063-17), and a third mobile home (21193 Tulare Street) is located on the eighth and final lot (Assessor's Parcel No. 069-063-16).  In this opinion, we identify these three lots as the Mobile Home Properties.

In or around August 2010, Alicia Medina orally agreed to purchase lots from the Riveras for $140,000 via an installment plan.  In or around September 2014, Medina and the Riveras decided that the former's daughter-in-law Mondragon would become the buyer of record.  Thereafter, Ticor Title Company (Ticor) provided escrow services.  The Riveras signed a grant deed prepared by Ticor and dated October 15, 2014.  The deed

---

[1] On November 4, 2019, the Riveras moved to dismiss this appeal.  On September 21, 2020, we denied their motion.

[2] We point out that many of the record citations in the parties' appellate briefs lacked precision or were otherwise unhelpful.  (See Cal. Rules of Court, rule 8.204(a)(1)(C) ["Each brief must . . .  [¶] . . . [¶]  . . . [s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears.  If any part of the record is submitted in an electronic format, citations to that part must identify, with the same specificity required for the printed record, the place in the record where the matter appears."].)  We reprimand counsel for their inattentiveness.

2.

incorporated a "Legal Description" that identified the Martin Avenue Property and the Mobile Home Properties as the lots conveyed to Mondragon. Escrow closed on December 18, 2014. Prior to this date, the parties agreed that Mondragon (1) owed $34,500 of the $140,000 purchase price; and (2) would pay monthly installments of $1,500 pursuant to the terms and conditions of a three-year promissory note.

Diana Bavier, a Ticor escrow officer, sent Mondragon a letter dated May 17, 2016, which read:

> "I am writing this letter to inform you that we have been trying to get in touch with you regarding the purchase of 14830 Matrin [*sic*] Street, Lost Hills, Ca., [*sic*] In the transaction there were three (3) lots that were conveyed to you in error and I need for you to please contact me so that we can correct the issue. Please call me . . . at your earliest convenience. If I do not hear from you we will have to get our Corporate Attorney's [*sic*] involved in the matter."

Bavier sent the Riveras a letter dated June 21, 2016, which advised the couple to have Mondragon sign an enclosed grant deed conveying the Mobile Home Properties back to them. No signature was obtained.

The Riveras initiated their lawsuit against Mondragon in November 2016.[3] They specified in the operative complaint that they sought reformation of the grant deed based on mutual mistake, among other things. The Riveras asserted that they and Mondragon agreed to transfer title to the Martin Avenue Property only, but the grant deed prepared by Ticor erroneously included the Mobile Home Properties.

A bench trial commenced on April 2, 2019. The Riveras reiterated that they intended to sell the Martin Avenue Property only. They signed but did not read the grant deed and other related documents because they "trusted that everything was right." After escrow closed in December 2014, the Riveras continued to collect rent from tenants

---

[3] The Riveras also sued Medina. Her motion for judgment under Code of Civil Procedure section 631.8 was granted by the superior court.

occupying the Mobile Home Properties. In February 2015, they paid property taxes for these three lots. On January 6, 2016, the Riveras attempted to pay these taxes again but were unable to do so. They contacted the county assessor's office and learned for the first time that Mondragon owned the Mobile Homes Properties and had paid the taxes. The Riveras immediately contacted Ticor. For the next six months, they continued to receive and accept Mondragon's monthly installments, a total sum exceeding $19,000.

With respect to the transaction between the Riveras and Mondragon, Bavier testified that she was given a single address (14830 Martin Avenue) and the "mobile homes" were never mentioned.

Mondragon testified that she intended to purchase both the Martin Avenue Property and the Mobile Home Properties. In her posttrial brief, she argued that the Riveras (1) "should be denied all relief due to their own negligence"; and (2) "waived any right to . . . reformation" by "accepting [her] payments." (Boldface & some capitalization omitted.)

The court issued a tentative decision on June 10, 2019, which became the statement of decision on August 5, 2019. The court expressly rejected Mondragon's "self-serving testimony" and found by clear and convincing evidence that (1) the Riveras and Mondragon "shared the intent and the agreement to transfer title to the [Martin Avenue Property] only"; (2) the parties "trusted Ticor to accurately describe the [Martin Avenue Property] in the agreement and related documents"; and (3) Ticor "mistakenly believed that the legal description it used"—which covered the Martin Avenue Property and the Mobile Home Properties—"accurately described what [the Riveras] agreed to sell and [Mondragon] agreed to buy." The court also concluded that (1) "the failure of [the Riveras] to read the documents did not constitute the type of gross negligence or neglect of a legal duty which might bar relief by way of reformation"; and (2) the Riveras' "continued receipt of contractual payments" that they "were entitled to receive" did not constitute a waiver of their right to seek reformation. The court ordered the correction of

4.

the grant deed's legal description to identify the Martin Avenue Property only. Judgment was entered on August 12, 2019.

## DISCUSSION

### I.       Overview of reformation

Civil Code section 3399 provides:

> "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."  (Accord, *Lemoge Electric v. County of San Mateo* (1956) 46 Cal.2d 659, 663, fn. \* (*Lemoge*); *Jones v. First American Title Ins. Co.* (2003) 107 Cal.App.4th 381, 388.)

"The purpose of reformation is to correct a written instrument in order to effectuate a common intention of both parties which was incorrectly reduced to writing." (*Lemoge*, *supra*, 46 Cal.2d at p. 663.)  "Reformation, on the ground of mutual mistake, presupposes actual agreement (i.e., no mistake) between the contracting parties as to what they intend, but further presupposes that all parties mistakenly believe that the written contract expresses their intention." (*Treadaway v. Camellia Convalescent Hospitals, Inc.* (1974) 43 Cal.App.3d 189, 197.)  "In the classic reformation case a contract is formed, but a provision of the writing that is executed, through mistake such as a scrivener's error, contradicts the terms to which the parties agreed.  In such a case, upon evidence of the actual agreement a court is empowered to correct the error by striking the mistaken language in the instrument and inserting appropriate language." (*Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576, 593, citing Civ. Code, § 3399; see *Jones v. First American Title Ins. Co.*, *supra*, 107 Cal.App.4th at p. 388 ["It is well settled that the remedy of reformation is equitable in nature and not restricted to the exact situations stated in [Civil Code] section 3399."].)  " 'To justify the court in changing the language of the instrument sought to be reformed, . . . it must be established that both

5.

parties agreed to something different from what is expressed in the writing, and the proof upon this point should be . . . clear and convincing. . . .' " (*Lister v. Sorge* (1968) 260 Cal.App.2d 333, 338, quoting *Cox v. Woods* (1885) 67 Cal. 317, 317-318; see *Lister v. Sorge*, *supra*, at p. 338 ["The rule requiring clear and convincing evidence is addressed primarily to the trial court, and on appeal the question is whether there is substantial evidence to support the trial court's conclusion."].)

## II.     Analysis

On appeal, Mondragon does not contest the superior court's findings that (1) she and the Riveras agreed to transfer title to the Martin Avenue Property only; (2) she and the Riveras believed that the documents prepared by Ticor would accurately reflect that shared intention; and (3) the grant deed prepared by Ticor mistakenly covered both the Martin Avenue Property and the Mobile Home Properties. (See *Shupe v. Nelson* (1967) 254 Cal.App.2d 693, 700-701 ["Mistake by a scrivener or draftsman in reducing the intent of the parties to writing is ground for reformation."]; *Williams v. Hebbard* (1939) 33 Cal.App.2d 686, 690 ["If the description in the deed does not cover the land intended by both parties to be conveyed, because of a mutual mistake, reformation of the deed would have been the proper remedy."].) Instead, Mondragon contends that the Riveras could not seek reformation because of (1) their "gross negligence in failing to familiarize themselves with the contents of the written contract prior to its execution"; and/or (2) their "continuing acceptance of the benefits of the contract with full knowledge of its contents." (Capitalization omitted.) We reject these contentions.

### a.    *Gross negligence*

"It is settled that, even in the absence of any misrepresentation, the negligent failure of a party to know or discover facts as to which both parties are under a mistake does not preclude recission or reformation because of the mistake." (*Van Meter v. Bent Construction Co.* (1956) 46 Cal.2d 588, 594 (*Van Meter*).) "[O]rdinary negligence will not bar a claim of mutual mistake because '[t]here is an element of carelessness in nearly

6.

every case of mistake . . . .' " (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 529 (*Hess*), quoting *Van Meter*, *supra*, at p. 594.) "Only gross negligence or 'preposterous or irrational' conduct will preclude a finding of mutual mistake." (*Hess*, at p. 529, quoting *Van Meter*, *supra*, at p. 595.)**4**

"Gross negligence has been said to mean the want of even scant care or an extreme departure from the ordinary standard of conduct." (*Van Meter*, *supra*, 46 Cal.2d at p. 594.) "[T]he failure to read a written instrument which it is sought to have reformed need not necessarily constitute a bar to relief. [Citation.] Whether or not such a failure amounts to such grossly and inexcusably negligent conduct as to preclude relief by way of reformation, depends upon the peculiar circumstances of each case. The failure to read an instrument prior to its execution is an act to be explained and where the testimony sufficiently explains such failure it is removed from the case just as other acts of failure might be removed. [Citation.]" (*California Trust Co. v. Cohn* (1932) 214 Cal. 619, 627; see *Haytasingh v. City of San Diego* (2021) 66 Cal.App.5th 429, 470 ["Whether conduct

---

**4** Mondragon's reliance on *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 is misplaced. In that case, the plaintiffs asked the court to find an arbitration agreement void for fraud in the execution. (*Id.* at p. 423.) The Supreme Court held that the plaintiffs' negligence in failing to review the agreement precluded the requested relief (*ibid.*) but pointed out that a contracting party's negligence does not necessarily preclude equitable relief such as reformation (*id.* at pp. 421-423). (See *Hess*, *supra*, 27 Cal.4th at pp. 528-529.) As mentioned, the Supreme Court in *Hess* emphasized:

> "Indeed, we have long held that ordinary negligence will not bar a claim of mutual mistake because '[t]here is an element of carelessness in nearly every case of mistake . . . .' [Citation.] Only gross negligence or 'preposterous or irrational' conduct will preclude a finding of mutual mistake. [Citation.] Thus, '[t]he fact that the party seeking relief has read the instrument and knows its contents does not prevent a court from finding that it was executed under a mistake.' [Citations.]" (*Hess*, *supra*, 27 Cal.4th at p. 529.)

7.

rises to the level of gross negligence as opposed to ordinary negligence is typically a question of fact."].)

"When the sufficiency of the evidence to sustain a finding of fact is contested on appeal, the issue thus presented is whether there is any substantial evidence, direct or indirect, contradicted or uncontradicted, which will support the finding [citations]; it will be assumed that the [trier of fact] resolved every factual conflict in favor of the prevailing party [citations]; and every inference reasonably deducible from the evidence which will support the finding must be accepted whereas those which will support a contrary conclusion must be rejected. [Citations.]" (*Cottle v. Gibbon* (1962) 200 Cal.App.2d 1, 4; see *Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1043 ["[W]here different inferences may be drawn depending upon the weight to be afforded to certain facts, we review the trial court's ruling under the more deferential substantial evidence standard of review."]; *In re Michael G.* (2012) 203 Cal.App.4th 580, 589 ["The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts."].)

Viewed in the light most favorable to the judgment, the record shows that the Riveras trusted that Ticor—the escrow holder—would prepare the grant deed and other related documents to accurately reflect their intent to sell (and Mondragon's intent to buy) the Martin Avenue Property only. (Cf. *Roller v. California Pacific Title Ins. Co.* (1949) 92 Cal.App.2d 149, 154 ["Appellant's burden of explanation [for his failure to read the contract] was much heavier since . . . he drew and prepared the contract."].) "An escrow holder is an agent and fiduciary of the parties to the escrow" (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711) and "has a fiduciary duty to the escrow parties to comply strictly with the parties' instructions" (*Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1179). (See *Summit Financial Holdings Ltd. v. Continental Lawyers Title Co.*, *supra*, at p. 711 ["If

8.

the escrow holder fails to carry out an instruction it has contracted to perform, the injured party has a cause of action for breach of contract."].)  Due to this belief, the Riveras signed the grant deed and other related documents without reading them.  (See *Lee v. Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915, 921 ["[P]laintiff was entitled to assume without inquiry . . . that [the escrow agent] was carrying out the escrow instructions."]; cf. *California Trust Co. v. Cohn*, *supra*, 214 Cal. at p. 627 ["[W]here the failure to familiarize one's self with the contents of a written contract prior to its execution is traceable *solely* to carelessness or negligence, reformation as a rule should be denied . . . ."  (italics added)].)  Substantial evidence supported the superior court's conclusion that the Riveras did not engage in "the type of gross negligence or neglect of a legal duty which might bar relief by way of reformation."

b.  *Waiver*

" ' "[W]aiver" means the intentional relinquishment or abandonment of a known right.'  [Citations.]  Waiver requires an existing right, the waiving party's knowledge of that right, and the party's 'actual intention to relinquish the right.'  [Citation.]  ' "Waiver always rests upon intent." '  [Citation.]  The intention may be express, based on the waiving party's words, or implied, based on conduct that is ' "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." '  [Citations.]"  (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475.)  " 'The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver" [citation].'  [Citations.]"  (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31.)

"Whether a waiver . . . has occurred is often a factual question, typically reviewed for substantial evidence."  (*Lynch v. California Coastal Com.*, *supra*, 3 Cal.5th at p. 476; see *In re Michael G.*, *supra*, 203 Cal.App.4th at p. 589.)  "[A]n appellate court evaluating the sufficiency of the evidence in support of a finding must make an appropriate

adjustment to its analysis when the clear and convincing standard of proof applied before the trial court." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005; see *id.* at p. 1009 ["'[T]he question before a court reviewing a finding that a fact has been proved by clear and convincing evidence is not whether the appellate court itself regards the evidence as clear and convincing; it is whether a reasonable trier of fact could have regarded the evidence as satisfying this standard of proof."].)

Viewed in the light most favorable to the judgment, the record shows that the Riveras first discovered that the Mobile Home Properties had been mistakenly conveyed to Mondragon in January 2016, more than a year after escrow closed. (Cf. *Vantress Farms, Inc. v. Sydenstricker* (1970) 11 Cal.App.3d 943, 949-950 [the defendants informed of the plaintiff's refusal to execute assignment of community lease interest but still authorized close of escrow and purchase of property without said assignment]; *Burnand v. Nowell* (1948) 84 Cal.App.2d 1, 2-6 [the plaintiffs in real estate transaction discovered alleged deficiency in acreage before paying entire purchase price and accepting the deed].) Prior to this, they had paid property taxes for the Mobile Home Properties in 2015 and collected rent from tenants. As observed by the superior court, although the Riveras accepted Mondragon's monthly installments after discovering the scrivener's error in the grant deed's legal description, they "were entitled to receive the monies they received" irrespective of which "party's current interpretation of the written agreement" prevailed. A reasonable fact finder could find no clear and convincing evidence that the Riveras waived their right to seek reformation of the grant deed's legal description.[5]

---

[5] By contrast, the continued receipt of contractual payments would have been so clearly inconsistent with an intent to enforce a right to rescind a contract so as to induce a reasonable belief that such right was relinquished. Whereas reformation "correct[s] a written instrument in order to effectuate a common intention of both parties which was incorrectly reduced to writing" (*Lemoge*, *supra*, 46 Cal.2d at p. 663), rescission "extinguishes the contract" and "restores the parties to their former positions by requiring

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondents Mario and Yolanda Rivera.

DETJEN, Acting P. J.

WE CONCUR:


FRANSON, J.


MEEHAN, J.

---

them to return whatever consideration they have received" (*Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1145).  Thus, " 'an assertion of a rescission is nullified by the subsequent acceptance of benefits growing out of a contract claimed to have been rescinded. . . .' "  (*Neet v. Holmes* (1944) 25 Cal.2d 447, 459.)