Filed 5/11/15  Riversland Cold Storage v. Fresno-Madera Production Credit Assn. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RIVERISLAND COLD STORAGE, INC., et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>FRESNO-MADERA PRODUCTION CREDIT ASSOCIATION,<br><br>Defendant and Respondent. | F068738<br><br>(Super. Ct. No. 08CECG01416)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Judge.

Wild, Carter & Tipton and Steven E. Paganetti for Plaintiffs and Appellants.

Lang, Richert & Patch and Scott J. Ivy for Defendant and Respondent.

-ooOoo-

Plaintiffs appeal from a judgment entered against them after defendant's motion for summary judgment was granted.  Plaintiffs' complaint alleged they signed a written agreement with defendant, but were induced to do so by defendant's oral misrepresentations about the terms it contained.  The complaint alleged causes of action including fraud, negligent misrepresentation, rescission, and reformation.  Defendant moved for summary judgment, asserting parol evidence of a prior or contemporaneous oral agreement is not admissible and plaintiffs could not bring their evidence within the

fraud exception to the parol evidence rule because they could not establish justifiable reliance on defendant's alleged misrepresentations. The trial court granted the motion and entered judgment in defendant's favor. We affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

From 2001 through 2007, plaintiffs obtained and renewed operating loans for their business from defendant; the loans were secured by interests in some of plaintiffs' real properties. In their business transactions with defendant, plaintiffs dealt with David Ylarregui. On January 1, 2007, plaintiffs' operating loan was in default. Plaintiffs proposed to sell their cold storage facility to pay off the debt, but advised defendant it could take two years to sell it. In March 2007, the parties negotiated a forbearance agreement, by which defendant agreed to forebear from foreclosing on the collateral if plaintiffs would pledge additional security. Plaintiffs contend Ylarregui agreed to a two-year extension of time for payment of the loan, and plaintiffs agreed to put up two ranches as additional security. Defendant prepared the written agreement, which provided a forbearance period that ended July 1, 2007, and listed eight pieces of real property, including plaintiffs' residence and a truck yard, as additional security. On March 26, 2007, plaintiffs and defendant executed the written forbearance agreement. Plaintiffs did not read the agreement before signing it, claiming they relied on Ylarregui's oral representations, made prior to and at the time of execution, that it contained a two year forbearance period and listed only the two ranches as additional security.

When they learned the actual terms of the written agreement, plaintiffs sued defendant, alleging causes of action including fraud, negligent misrepresentation, rescission, and reformation.[1] Defendant moved for summary judgment, asserting

---

[1] We recognize rescission and reformation are remedies rather than actual causes of action. The portions of the complaint labeled as causes of action for rescission and reformation incorporate by reference the allegations of fraud and negligent misrepresentation. We refer to them as causes of action for rescission and reformation as a shorthand means of distinguishing

plaintiffs were bound by the written contract, and parol evidence of an oral agreement to different terms was not admissible. The trial court granted summary judgment on that ground. We reversed, concluding the fraud exception to the parol evidence rule made admissible evidence of the misrepresentations alleged by plaintiffs. We interpreted the limitations on the fraud exception to the parol evidence rule, as set out in *Bank of America etc. Assn. v. Pendergrass* (1935) 4 Cal.2d 258 (*Pendergrass*) and its progeny, to preclude admission of parol evidence of a prior or contemporaneous promise that directly contradicted the promises made in the written contract, but not to prohibit parol evidence of a contemporaneous misrepresentation of fact as to the terms contained in the written agreement. Because plaintiffs asserted Ylarregui misrepresented the terms contained in the written contract at the time he presented it to them for signing, evidence of those misrepresentations fell within the fraud exception to the parol evidence rule, and was admissible to support plaintiffs' claims.

The California Supreme Court, in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169 (*Riverisland*), affirmed our judgment, but did so by overruling *Pendergrass*. It concluded the limitations *Pendergrass* placed on the fraud exception to the parol evidence rule were not supported by the language of the statute establishing that exception (Code Civ. Proc., § 1856, subds. (f), (g)) or consistent with prior case law. (*Riverisland*, at p. 1182.) Further, "*Pendergrass* failed to account for the fundamental principle that fraud undermines the essential validity of the parties' agreement. When fraud is proven, it cannot be maintained that the parties freely entered into an agreement reflecting a meeting of the minds." (*Ibid*.) The court reiterated the rule that parol evidence is admissible to prove fraud: "'Parol evidence is always admissible to prove fraud, and it was never intended

them from the separately stated claims seeking damages for fraud and negligent misrepresentations.

3.

that the parol evidence rule should be used as a shield to prevent the proof of fraud.' [Citation.]" (*Id*. at pp. 1180-1181.)  The court made no distinction between evidence of false promises and evidence of misrepresentations of fact; it made no distinction between promises or fraudulent representations that contradicted the express provisions of the written contract and those that did not.  In closing, the court noted that fraud, including promissory fraud, still requires a showing of justifiable reliance on the misrepresentation or promise.  (*Id*. at p. 1183.)

After remand to the trial court, defendant again moved for summary judgment, asserting plaintiffs could not establish the fraud necessary to invoke the fraud exception to the parol evidence rule because they could not demonstrate they justifiably relied on the alleged misrepresentations.  Defendant contended plaintiffs cannot demonstrate their reliance on the alleged misrepresentations was justifiable because they could have learned the true terms of the written agreement simply by reading it, and nothing prevented plaintiffs from doing so.  The trial court granted the summary judgment motion, finding plaintiffs had not raised a triable issue of fact regarding reasonable reliance.  Plaintiffs appeal.

## DISCUSSION

### I.      Standard of Review

A grant of summary judgment is reviewed de novo.  (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 84 (*Knapp*).)  Summary judgment is properly granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  In moving for summary judgment, a "defendant … has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action … cannot be established, or that there is a complete defense to that cause of action."  (Code Civ. Proc., § 437c, subd. (p)(2).)  Once the moving defendant has met its initial burden, "the burden

4.

shifts to the plaintiff … to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Ibid*.)

In independently reviewing a summary judgment, "we apply the same three-step analysis as the trial court. First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue." (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.) "There is a triable issue of fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.) The evidence of the party opposing the motion must be liberally construed, and that of the moving party strictly construed. (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 308.) "[W]e review the ruling of the trial court, not its rationale." (*Knapp*, *supra*, 123 Cal.App.4th at p. 85.)

## II.    The Parol Evidence Rule

The parol evidence rule is codified at Code of Civil Procedure section 1856[2] and Civil Code section 1625.[3] It generally prohibits the introduction of extrinsic evidence, including evidence of any prior or contemporaneous oral agreement, to vary, alter, or add to the terms of an integrated written agreement. "Although the parol evidence rule results

---

[2]    Code of Civil Procedure section 1856, subdivision (a), provides: "Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement." All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[3]    Civil Code section 1625 provides: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

in the exclusion of evidence, it is not a rule of evidence but one of substantive law. [Citation.]  It is founded on the principle that when the parties put all the terms of their agreement in writing, the writing itself becomes the agreement.  The written terms supersede statements made during the negotiations.  Extrinsic evidence of the agreement's terms is thus *irrelevant,* and cannot be relied upon.  [Citation.]  '[T]he parol evidence rule, unlike the statute of frauds, does not merely serve an evidentiary purpose; it determines the enforceable and incontrovertible terms of an integrated written agreement.'  [Citations.]  The purpose of the rule is to ensure that the parties' final understanding, deliberately expressed in writing, is not subject to change.  [Citation.]" (*Riverisland*, *supra*, 55 Cal.4th at p. 1174.)

There are exceptions to application of the parol evidence rule:

"(f)  Where the validity of the agreement is the fact in dispute, this section does not exclude evidence relevant to that issue.

"(g)  This section does not exclude other evidence … to establish illegality or fraud."  (§ 1856, subds. (f), (g).)

## A.     The *Pendergrass* decision

In 1935, the *Pendergrass* decision placed limits on the otherwise broad reach of the fraud exception to the parol evidence rule:  "Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing."  (*Pendergrass*, *supra*, 4 Cal.2d at p. 263.) Thus, under *Pendergrass*, a prior or contemporaneous oral promise that directly contradicted a promise contained in the written agreement was not admissible to prove fraud.  (*Ibid*.)

## B. Our prior decision

Defendant's first motion for summary judgment was granted after the trial court excluded plaintiffs' parol evidence of oral statements Ylarregui allegedly made prior to and at the time plaintiffs signed the written forbearance agreement. Plaintiffs asserted Ylarregui misrepresented that the terms contained in the written agreement were the same as those discussed and agreed to earlier, when in fact they were not. The trial court excluded evidence of Ylarregui's alleged oral statements, concluding the statements constituted promises directly contradicting the promises made in the written agreement, which *Pendergrass* made inadmissible.

We interpreted *Pendergrass* to bar only parol promises that were contrary to the promises contained in the written contract. We distinguished such promises from factual representations about the terms contained in the contract. Because plaintiffs asserted Ylarregui represented to them that the written contract provided for a two-year forbearance period and identified as additional security only two pieces of real property, while the written contract actually provided for a three-month forbearance period and identified eight pieces of real property as additional security, we determined plaintiffs were not seeking to introduce evidence of promises that contradicted those contained in the writing, but evidence of factual misrepresentations about the content of the writing. Accordingly, we found the evidence should have been admitted and reversed the judgment.

## C. The *Riverisland* decision

In *Riverisland*, the court overruled *Pendergrass* and abrogated the limits it placed on the fraud exception to the parol evidence rule. (*Riverisland*, *supra*, 55 Cal.4th at p. 1182.) The court reasoned: "[T]he parol evidence rule, intended to protect the *terms* of a valid written contract, should not bar evidence challenging the *validity* of the agreement itself. 'Evidence to prove that the instrument is void or voidable for mistake, fraud, duress, undue influence, illegality, alteration, lack of consideration, or another

7.

invalidating cause is admissible. This evidence does not contradict the terms of an effective integration, because it shows that the purported instrument has no legal effect.' [Citations.]" (*Id.* at pp. 1174-1175.) The court concluded *Pendergrass* was an aberration. "It purported to follow section 1856 [citation], but its restriction on the fraud exception was inconsistent with the terms of the statute, and with settled case law as well. *Pendergrass* failed to account for the fundamental principle that fraud undermines the essential validity of the parties' agreement. When fraud is proven, it cannot be maintained that the parties freely entered into an agreement reflecting a meeting of the minds.… The *Pendergrass* court sought to '"prevent frauds and perjuries"' [citation], but ignored California law protecting against promissory fraud." (*Riverisland*, at p. 182.)

In closing, the *Riverisland* court noted "that promissory fraud, like all forms of fraud, requires a showing of justifiable reliance on the defendant's misrepresentation." (*Riverisland*, *supra*, 55 Cal.4th at p. 1183.) Although defendant argued plaintiffs failed to raise a triable issue of fact regarding the element of justifiable reliance, because they admitted they did not read the written contract before signing it, the court declined to address the issue of reliance; it had not been addressed in either the trial court or this court. (*Ibid*.) In a footnote, however, the court observed:

> "In *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 419 … (*Rosenthal*), we considered whether parties could justifiably rely on misrepresentations when they did not read their contracts. We held that negligent failure to acquaint oneself with the contents of a written agreement precludes a finding that the contract is void for fraud in the execution. [Citation.] In that context, '[o]ne party's misrepresentations as to the nature or character of the writing do not negate the other party's apparent manifestation of assent, if the second party had "reasonable opportunity to know of the character or essential terms of the proposed contract." [Citation.]' [Citation.]
>
> "We expressed no view in *Rosenthal* on the 'validity' and 'exact parameters' of a more lenient rule that has been applied when equitable relief is sought for fraud in the inducement of a contract. [Citations.] Here as well we need not explore the degree to which failure to read the contract

8.

affects the viability of a claim of fraud in the inducement." (*Riverisland, supra*, 55 Cal.4th at pp. 1183-1184, fn. 11.)

### D.    Justifiable reliance

Defendant's current motion for summary judgment addressed four causes of action:  fraud, negligent misrepresentation, rescission, and reformation.  All were based on the same allegations of misrepresentation.  Plaintiffs alleged they reached an agreement with Ylarregui that defendant would not foreclose on plaintiffs' properties, which defendant held as security for their loan, for a period of two years; in exchange, plaintiffs would pledge two ranches as additional security for the loan.  Further, at the time plaintiffs executed the written contract, Ylarregui falsely represented to them that the writing contained the agreed upon terms, when it actually provided for only a three month forbearance period and added eight properties as additional security, including plaintiffs' residence and a truck yard.

Defendant's motion for summary judgment presented three arguments.  (1) Plaintiffs' action was based on a claim of fraud in the execution of the contract, and the element of justifiable reliance essential to that claim could not be established because plaintiffs failed to read the contract.  (2) If plaintiffs' action was instead based on fraud in the inducement, a more lenient rule allowing for relief even when plaintiff did not read the contract, would apply only to claims for equitable relief, and plaintiffs' claims for equitable relief are moot.  (3) Even if the first two arguments were inapplicable, the undisputed facts presented by defendant demonstrated that plaintiffs' reliance on Ylarregui's alleged misrepresentations was not justifiable.

### 1.    *Fraud in the execution*

"California law distinguishes between fraud in the 'execution' or 'inception' of a contract and fraud in the 'inducement' of a contract.  In brief, in the former case '"the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or

does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is *void*. In such a case it may be disregarded without the necessity of rescission.'" [Citation.] Fraud in the inducement, by contrast, occurs when '"the promisor knows what he is signing but his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is *voidable*. In order to escape from its obligations the aggrieved party must *rescind* ....'" [Citation.]" (*Rosenthal, supra,* 14 Cal.4th at p. 415.)

In *Rosenthal*, the plaintiffs invested in stock and bond mutual funds through the defendants, a stockbrokerage and its representatives. (*Rosenthal, supra*, 14 Cal.4th at p. 402.) When the value of the mutual funds declined, the plaintiffs sued the defendants for fraud and negligent misrepresentation, among other things. (*Ibid.*) The defendants moved to compel arbitration of the dispute, pursuant to an arbitration provision contained in the client agreements. The plaintiffs opposed, asserting fraud in the execution of the agreements. (*Id.* at p. 403.) The plaintiffs asserted the stock brokers led the plaintiffs to believe they worked for Great Western Bank, where most of the plaintiffs held accounts, misrepresented the nature of the investments being sold, did not advise the plaintiffs of the arbitration provision, and assured the plaintiffs the client agreement was a mere formality needed to open the account. (*Id.* at pp. 403-404.)

The court in *Rosenthal* concluded the plaintiffs' claim of fraud in the execution of the entire agreement was an issue for the trial court to decide, not an arbitrator. "If the entire contract is void *ab initio* because of fraud, the parties have not agreed to arbitrate any controversy," including whether the agreements were void due to fraud in the execution. (*Rosenthal, supra,* 14 Cal.4th at p. 416.) The defendants contended the plaintiffs could not establish fraud in the execution, because they could not demonstrate justifiable reliance on the alleged misrepresentations; the plaintiffs had a reasonable opportunity to learn the true terms of the client agreements by simply reading them, but failed through their own neglect to do so. (*Id.* at p. 419.) The court agreed with the

defendants "that fraud does not render a written contract *void* where the defrauded party had a reasonable opportunity to discover the real terms of the contract. A contract may, however, be held wholly void, despite the parties' apparent assent to it, when, '"*without negligence on his part*, a signer attaches his signature to a paper assuming it to be a paper of a different character."' [Citations.]" (*Id.* at pp. 419-420.)

The court noted some prior cases stated a broader rule: while misrepresentations once excused failure to read a contract only within a fiduciary relationship, that excuse may now be asserted even when there is no fiduciary relationship between the parties. (*Rosenthal, supra,* 14 Cal.4th at p. 420.) *Rosenthal* concluded those cases stated the rule too broadly. "While some prior cases have held equitable relief, such as rescission or reformation of the contract, may be available despite the defrauded party's failure to read the contract, our law is clear that misrepresentation does not render the contract *void* unless the misled party, before making the agreement, lacked a reasonable opportunity to learn its terms." (*Id*. at p. 421.)

Thus, the court distinguished between fraud in the execution, asserted in support of a claim the contract is void, and fraud in the inducement, asserted to obtain equitable remedies, such as rescission or reformation. It concluded "that, whatever validity the [broader] rule … may have when the plaintiff seeks equitable relief for fraud in the inducement of a contract, and whatever the exact parameters of that rule might be, the rule is not a correct statement of the test to be applied when the plaintiff seeks a judicial determination the contract is void for fraud in the execution." (*Rosenthal*, *supra*, 14 Cal.4th at p. 423.)

Some of the plaintiffs in *Rosenthal* declared that, because they believed the stockbrokers were representatives of Great Western Bank, a bank with which the plaintiffs had established a long-term relationship, they trusted the stockbrokers and relied on their misrepresentations and assurances that the plaintiffs did not need to read the agreements. (*Rosenthal*, *supra*, 14 Cal.4th at pp. 423-424.) The court held these

declarations did not establish fraud in the execution of the client agreements. (*Id*. at p. 425.) The plaintiffs did not demonstrate they lacked a reasonable opportunity to discover the nature of the client agreements before they signed them. (*Ibid*.) As to the plaintiffs who submitted declarations stating they could speak and read little or no English or were legally blind, and they had informed the defendants' representatives of this, and the plaintiff whose daughter asserted the plaintiff suffered from Alzheimer's disease and could not understand the transaction, the trial court should have resolved conflicts in the evidence and determined whether the plaintiffs established fraud in the execution of their agreements. (*Id*. at pp. 427-431.)

Thus, *Rosenthal* reiterated a rule that a party to a contract cannot demonstrate justifiable reliance on the other party's misrepresentations, for purposes of establishing fraud in the execution of the contract and rendering the contract void, when the allegedly defrauded party had a reasonable opportunity to read the contract and discover its terms. Defendant invokes this rule, asserting plaintiffs' claims were based on fraud in the execution of the forbearance agreement, and the undisputed facts indicate nothing prevented plaintiffs from reading the contract prior to signing it. Because plaintiffs had a reasonable opportunity to discover the true terms of the written agreement by simply reading it, defendant contends, they cannot show their reliance on Ylarregui's alleged misrepresentations was justifiable.

In its brief, defendant repeatedly assures us that, in our decision in the prior appeal in this case, we "held Plaintiffs' claims constitute 'fraud in the procurement or execution,' and not 'fraud in the inducement.'" Defendant adds that "it is undisputed" and "Plaintiffs concede" we so held. In our prior opinion in this case, however, we distinguished a false promise, made prior to or at the time of execution of a written contract, that directly contradicted the promises made in the written contract, from a misrepresentation of fact, made at the time of execution of the written contract, concerning the terms actually contained in the written contract. We did not discuss any

12.

distinction between fraud in the execution and fraud in the inducement, much less "hold" that the fraud alleged by plaintiffs fell into one category or the other. We were interpreting *Pendergrass* and the limit it placed on the fraud exception to the parol evidence rule; that limit applied when the fraud took the form of a false promise directly contradicting the promise made in the written agreement, and the court distinguished such promissory fraud from other forms of fraud that might invalidate an agreement.

In our prior opinion in this case, we quoted the language of *Pendergrass* placing a limit on the fraud exception to the parol evidence rule: "Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing." (*Pendergrass, supra*, 4 Cal.2d at p. 263.) We characterized plaintiffs' allegations of fraud as alleging a misrepresentation of fact as to the terms actually contained in the written agreement, rather than a false promise directly contradicting the promises in the written contract. We concluded: "Misrepresentation of the terms of the written contract, in order to induce the other party to sign it, constitutes 'fraud in the procurement of the instrument' [citation], which *Pendergrass* and *Fleury* [*v. Ramacciotti* (1937) 8 Cal.2d 660 (*Fleury*)] recognized as an appropriate circumstance for application of the fraud exception to the parol evidence rule." We interpreted the *Pendergrass* court's use of the term "some fraud in the procurement of the instrument," and used the term ourselves, not as a technical term referring to either fraud in the inducement or fraud in the execution, but as a general term, referring to any circumstance in which one party uses fraud to obtain the signature of the other party on a written contract to which the other party does not actually agree. In other words, it was a broad term, encompassing both fraud in the execution and fraud in the inducement.

In any event, our opinion in the prior appeal discussed, interpreted, and applied the rule set out in *Pendergrass*. The Supreme Court, in its *Riverisland* opinion, overruled *Pendergrass*, holding that it incorrectly interpreted the fraud exception to the parol evidence rule. Thus, the *Riverisland* decision superseded our opinion interpreting and applying *Pendergrass* to plaintiffs' case. *Riverisland* abrogated the *Pendergrass* rule and our interpretation and application of it. Thus, defendant's repeated assertions that we "held" that plaintiffs' claim is one of fraud in the execution, and its assertion that this holding is law of the case and survives the Supreme Court's overruling of *Pendergrass*, are in error.

Fraud in the execution exists when "'the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all.'" (*Rosenthal*, *supra*, 14 Cal.4th at p. 415.) "To make out a claim of fraud in the execution … plaintiffs must show their apparent assent to the contracts—their signatures on the … agreements—is negated by fraud so fundamental that they were deceived as to the basic character of the documents they signed and had no reasonable opportunity to learn the truth." (*Id*. at p. 425.) There was no evidence plaintiffs were deceived as to the basic character of the documents they signed or did not know what they were signing. The evidence indicates plaintiffs knew they were entering into a contract; they were not tricked into signing the contract believing it to be something else. They knew they were executing a forbearance agreement, the effect of which was to postpone any action by defendant to foreclose on the properties securing the loan and to extend plaintiffs' time to repay the loan. Certain terms of the agreement were allegedly misrepresented to them, but they were not deceived about the basic nature of the documents they signed.

Further, plaintiffs did not seek to have the contract declared void due to lack of mutual assent. Rather, their complaint sought damages, as well as rescission and

reformation of the contract, equitable remedies consistent with a claim of fraud in the inducement.

Accordingly, we conclude that, inasmuch as defendants' motion for summary judgment failed to establish plaintiffs' complaint sought to avoid the contract on the ground of fraud in the execution, defendant was not entitled to summary judgment on the ground plaintiffs could not demonstrate justifiable reliance on defendant's alleged fraud as a matter of law due to their failure to read the contract.

### 2.     Fraud in the inducement

In *Riverisland*, the court acknowledged that some cases have applied a more lenient rule to a party's failure to read the contract, when the party seeks equitable relief for fraud in the inducement, rather than seeking to void the contract based on fraud in the execution.  (*Riverisland*, *supra*, 55 Cal.4th at pp. 1183-1184, fn. 11.)  The court noted that it declined, in *Rosenthal*, to express any view on the validity or exact parameters of such a rule.  (*Riverisland,* at pp. 1183-1184, fn. 11.)  Because it did not address the issue of justifiable reliance, the court in *Riverisland* likewise declined to "explore the degree to which failure to read the contract affects the viability of a claim of fraud in the inducement."  (*Ibid*.)

In *California Trust Co. v. Cohn* (1932) 214 Cal. 619 (*Cohn*), when the plaintiff sued to quiet title to certain real property, the defendants cross-complained against them alleging fraud.  (*Id*. at p. 622.)  The defendants alleged the plaintiff owned the subject property and represented to the defendants that, if they would pay the plaintiff $7,500, the plaintiff would hold title to the property as trustee for the benefit of the plaintiff and the defendants; the plaintiff would also improve the property, sell it within a year, and pay the defendants $17,500 of the proceeds.  The plaintiff prepared a written agreement, which it represented contained these provisions.  In reliance on that representation, the defendants signed the agreement without reading it.  (*Id*. at p. 623.)  When the plaintiff demanded further payment from the defendants pursuant to the written agreement, the

15.

defendants read the contract for the first time and discovered it contained provisions significantly different from the prior oral agreement. (*Id*. at pp. 623-624.) The cross-complaint sought a determination that the plaintiff held title to the property in trust for itself and the defendants, reformation of the written agreement to make it conform to the parties' oral agreement, and damages resulting from the fraud. (*Id*. at p. 624.) The plaintiff's demurrer to the cross-complaint was sustained and the defendants appealed.

The court found the cross-complaint alleged sufficient facts to warrant reformation of the contract. (*Cohn*, *supra*, 214 Cal. at p. 626.) "It is elementary that when through fraud, or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised." (*Id*. at p. 626.) The plaintiff asserted a party has a legal duty to ascertain the contents of a written agreement before signing it and, having failed to read it, cannot attack the agreement on the ground he relied on the false representations of the other party about its contents. (*Ibid*.) After noting there was a "contrariety of opinion" on the issue, the court stated that "the failure to read a written instrument which it is sought to have reformed need not necessarily constitute a bar to relief. [Citation.] Whether or not such a failure amounts to such grossly and inexcusably negligent conduct as to preclude relief by way of reformation, depends upon the peculiar circumstances of each case.… There has always been a sharp struggle in the courts between the desire to repress fraud upon the one hand, and on the other to discourage negligence and the opportunity and invitation to commit perjury." (*Id*. at p. 627.) The court concluded: "[W]here the failure to familiarize one's self with the contents of a written contract prior to its execution is traceable solely to carelessness or negligence, reformation as a rule should be denied; but … where such failure, and perhaps negligence, is induced … by the false representations and fraud of the other party to the contract that its provisions are different from those set out, the courts, even in the absence of a fiduciary or confidential relationship between the parties, should reform, and in most cases have reformed, the

16.

instrument so as to cause it to speak the true agreement of the parties. [Citations] … [A] party to an instrument who by fraud leads the other party to sign without reading it is in no position to urge the latter's negligence in bar of reformation." (*Ibid*.)

In *Fleury, supra,* 8 Cal.2d 660, the defendants executed a note and mortgage to the payee, who died before the note was paid. Babin, the executor of the payee's estate, failed to enforce the obligation and the statute of limitations ran. The defendant, Ramacciotti, because he was a friend and business associate of Babin, agreed to permit foreclosure, provided no deficiency judgment would be entered against him; he waived the defense of the statute of limitations and signed a renewal note without reading it, based on Babin's representation it contained the provision preventing a deficiency judgment. Babin filed an action on the new note and Ramacciotti defaulted. Babin died and Ramacciotti discovered a deficiency judgment had been entered against him. Ramacciotti had the default set aside and the trial court subsequently denied a deficiency judgment. (*Id*. at p. 661.) The Supreme Court affirmed.

The plaintiff contended Ramacciotti could not raise Babin's fraud as a defense to the debt, because of his carelessness in failing to read the renewal note. The court rejected the argument: "Plaintiff … conceives the rule to be that only where confidential relations exist between the parties is one who negligently fails to read an instrument entitled to avoid it for fraud. Such is not, however, the view adopted by this court. In *California Trust Co. v. Cohn* …, we declared that where failure to read an instrument is induced by fraud of the other party, the fraud is a defense even in the absence of fiduciary or confidential relations." (*Fleury*, *supra*, 8 Cal.2d at p. 662; accord, *Security-First Nat'l Bank v. Earp* (1942) 19 Cal.2d 774, 777-778 (*Security-First*).)

In *Van Meter v. Bent Construction Co*. (1956) 46 Cal.2d 588 (*Van Meter*), the defendant, a contractor, contracted to construct a dam for the city; the plaintiff subcontracted to clear brush and trees from the reservoir basin. (*Id*. at p. 590.) The defendant represented to the plaintiff that the area to be cleared would be marked with

17.

flags by the city. When the plaintiff examined the area prior to making his bid, only one portion of the basin area had been marked, and the plaintiff's bid was based on that area. After his bid was accepted and the plaintiff began his work, he was informed a larger area needed to be cleared. (*Id*. at p. 591.) The trial court concluded the defendant's conduct constituted fraud, although it was not willful; the plaintiff was negligent in not using reasonable care to determine the extent of the work to be performed under the subcontract. The trial court granted the plaintiff no relief. (*Id*. at p. 593.) The Supreme Court reversed the judgment.

"[E]ven in the absence of any misrepresentation, the negligent failure of a party to know or discover facts as to which both parties are under a mistake does not preclude rescission or reformation because of the mistake." (*Van Meter*, *supra*, 46 Cal.2d at p. 594.) "There is even more reason for not barring a plaintiff from equitable relief where his negligence is due in part to his reliance in good faith upon the false representations of a defendant, although the statements were not made with intent to deceive. [Citations.] A defendant who misrepresents the facts and induces the plaintiff to rely on his statements should not be heard in an equitable action to assert that the reliance was negligent unless plaintiff's conduct, in the light of his intelligence and information, is preposterous or irrational." (*Id*. at p. 595.) The section of the contract describing the work to be done stated the area would be flagged by the city; a map that showed the area to be cleared was included in the general contract, but was not referenced in the portion describing the work to be done by the plaintiff. (*Id*. at pp. 590-591, 595.) The defendants, who were in a position to know the facts, represented to the plaintiff that the area had been flagged. (*Id*. at pp. 595-596.) Thus, the plaintiff's conduct was not preposterous or irrational, and the plaintiff should not have been precluded from obtaining relief. (*Id*. at p. 596.)

More recently, in *Chapman v. Skype, Inc*. (2013) 220 Cal.App.4th 217 (*Chapman*), the plaintiff filed a class action complaint alleging the defendant misrepresented that its

monthly telephone calling plan was unlimited when it was not. (*Id*. at p. 222.) The word "unlimited" in the plan description was followed by a footnote designator; the footnote stated a fair usage policy applied. On another page, the fair usage policy indicated the plan had time limits on daily and monthly calls. When she purchased a subscription to the calling plan, the plaintiff did not notice the footnote. (*Id*. at p. 223.) The trial court sustained the defendant's demurrer to the complaint, concluding the footnote and limitation were conspicuous and clearly disclosed. (*Id*. at p. 224.)

The appellate court reversed, concluding the plaintiff adequately alleged a misrepresentation of fact, based on the use of the term "unlimited" to describe calling plans that were not unlimited. (*Chapman*, *supra*, 220 Cal.App.4th at p. 222.) Relying on *Rosenthal*, the defendant argued the plaintiff could not have justifiably relied on the alleged misrepresentation after being given a reasonable opportunity to read the subscription agreement. The court noted *Rosenthal* distinguished fraud in the execution from fraud in the inducement; it also "distinguished cases holding that a plaintiff may obtain equitable relief from the terms of a contract that was procured through fraud in the inducement despite his or her negligence in failing to read the contract or otherwise failing to discover the facts. [Citation.] Although the failure to read a contract precludes a claim of fraud in the execution, so as to render the contract completely void [citation], it does not necessarily preclude equitable relief from the contract terms based on a misrepresentation." (*Chapman,* at pp. 232-233, fn. omitted.) The plaintiff did not allege fraud in the execution or contend the contract was void, so *Rosenthal* was not on point. (*Chapman,* at p. 233.) The court concluded the plaintiff's "failure to read the entire subscription agreement does not necessarily preclude her justifiable reliance on a representation in the subscription agreement that the plan was 'Unlimited' for purposes of negligent and intentional misrepresentation." (*Ibid*.)

Thus, the cases distinguish between allegations of fraud in the execution, made in support of a claim that the contract is void, and allegations of fraud in the inducement,

19.

made in support of a claim for equitable remedies, such as rescission or reformation of the contract. Where a party seeks to avoid a contract due to fraud in the execution, the party must establish "fraud so fundamental that they were deceived as to the basic character of the documents they signed and had no reasonable opportunity to learn the truth." (*Rosenthal*, *supra*, 14 Cal.4th 425.) The doctrine applies when there is no mutual assent to the contract because the defrauded party does not know he is executing a contract. (*Id*. at p. 415.) Generally, in that situation, only a brief reading or review of the document by the party before signing it would reveal its nature as a contract affecting the legal rights of the party, or would at least raise sufficient suspicions to warrant further inquiry as to the nature and effect of the document to be signed. Thus, the party reasonably can be expected to read and discover, or inquire into, the true nature of the document before signing it, absent some disability or other circumstance that prevents the party from reading the document.

Where there is fraud in the inducement, however, the allegedly defrauded party is aware he is signing a contract, but may not be aware of all of its terms. If the other party attempts to induce him to sign the contract by misrepresenting the terms it contains, or misrepresenting that it contains the terms the parties already agreed to, it may take more than a brief reading or review of the contract to discover the falsity of that representation. In *Van Meter*, for example, the map showing the actual area required to be cleared by the subcontractor for the construction of the dam was contained in a 110-page general contract, which included 27 folded pages of drawings and maps; the relevant map was not referred to in the subcontract, in the table of contents of the general contract, or in the section of the general contract describing the area to be cleared, which the plaintiff had reviewed. (*Van Meter*, *supra*, 46 Cal.2d at pp. 590-591.) The plaintiff would have been required to review the entire general contract, most of which did not pertain to his work, in order to discover the map illustrating the area to be cleared and to determine the area encompassed a larger area than that actually marked with flags by the city.

20.

The more lenient rule, which permits the allegedly defrauded party that seeks equitable remedies to pursue a claim or defense of fraud despite the party's failure to read the contract and discover its true terms, permits the court to balance the equities between the parties. It can balance the alleged neglect of the party that failed to read the contract, which may amount to negligence or mere carelessness, against the fraud of the other party, which may consist of intentional or merely negligent misrepresentation.

The cases that have permitted a party to allege and prove fraud in the inducement, based on misrepresentation of the terms of the written contract, despite the party's failure to read the contract, have done so in the context of claims for equitable relief. Defendant contends this more lenient rule does not permit plaintiffs to pursue equitable claims for rescission and reformation because those claims are moot; it asserts they became moot because, after the filing of the complaint, plaintiffs paid off their operating loan and defendant dismissed its cross-complaint for foreclosure. Thus, the contract has been fully performed and there is nothing left to rescind or reform. Plaintiffs did not initially address the assertion those causes of action are moot. After oral argument, we requested additional briefing from the parties regarding whether the rescission and reformation causes of action were rendered moot when plaintiffs paid off the loan after the action was commenced and, if not, what effectual relief plaintiffs could still obtain on those causes of action.[4]

---

[4] In connection with their supplemental brief, plaintiffs requested we augment the record with notices of default recorded by defendant in Kings County and Tulare County in March 2008 and a notice of trustee's sale recorded in Kings County on October 23, 2008. They assert these documents support their claim for damages for sale of the cold storage facility because they show plaintiffs sold the facility to prevent defendant from conducting a nonjudicial foreclosure sale of their residence, which was scheduled for November 18, 2008. We deny the request. Evidence of the recording of the notices of default in March 2008 is already in the record. The notice of trustee's sale recorded in October 2008 is not relevant to demonstrate plaintiffs' motive for selling the cold storage facility seven months earlier, in April 2008.

21.

### 3. Rescission

Full execution of a contract does not necessarily bar rescission. (*Engle v. Farrell* (1946) 75 Cal.App.2d 612, 617-618.) Rescission is effected by giving notice of rescission to the other party and "[r]estor[ing] to the other party everything of value which he has received from him under the contract or offer[ing] to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so." (Civ. Code, § 1691, subd. (b).) "It is the purpose of rescission 'to restore both parties to their former position as far as possible' [citations] and 'to bring about substantial justice by adjusting the equities between the parties' despite the fact that 'the status quo cannot be exactly reproduced.' [Citations]" (*Runyan v. Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 316.) When a contract has been rescinded, a party may bring "an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances." (Civ. Code, § 1692.) "The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled." (*Ibid*.)

As a practical matter, because of the nature of the contract involved, it does not appear either party can restore to the other the consideration exchanged under the contract. The consideration plaintiffs received was time—an extension of time to pay the outstanding loan. The consideration defendant received was a security interest in several pieces of real property. Presumably, since defendant acknowledges plaintiffs paid off the loan, defendant has already released the security interest it held in plaintiffs' real property. Thus, it does not appear plaintiffs would receive anything as a result of rescission of the contract and restoration of the consideration exchanged.

Plaintiffs asserted in their supplemental brief that, if the forbearance agreement were rescinded, they would still be entitled to equitable relief, including a monetary award, to put them back in the position in which they were before the agreement was

22.

executed.  According to plaintiffs, before the forbearance agreement was executed, the only property pledged as security on the loan was a 15-acre ranch and a truck yard.[5] Plaintiffs were in possession of the cold storage facility and it was not pledged as security for the loan; plaintiffs assert the cold storage facility and plaintiffs' residence were fraudulently included as additional security in the forbearance agreement, and they contend they were forced to sell the cold storage facility for less than its fair market value in order to avoid a foreclosure sale of their residence.  Plaintiffs contend Civil Code section 1692 entitles them to consequential damages that will afford them complete relief and put them back in status quo in the event of rescission of the forbearance agreement.  They imply, without specifically stating, that they believe they may recover damages for the forced sale of the cold storage facility, presumably the difference in value between the sale price and the fair market value of the facility.  Plaintiffs also list as consequential damages foreclosure costs they paid, their own attorney fees for prosecuting this action, and punitive damages.

The object of rescission is to put the parties back in the position in which they were before execution of the rescinded contract.  Before execution of the forbearance agreement, plaintiffs were in default on their loan and owed defendant approximately $776,000.  In February 2007, defendant sent plaintiffs a letter demanding payment. Plaintiff Lance Workman met with Ylarregui and told him that he was already trying to sell the cold storage facility in order to pay off the loan, but a real estate agent told him it could take up to two years to sell it.  On March 26, 2007, the parties entered into the forbearance agreement.  By the terms of the forbearance agreement as written, plaintiffs' extended time to pay off the debt expired on July 1, 2007.  In February 2008, plaintiffs received an offer for the purchase of the cold storage facility.  In March 2008, defendant

---

**5** This assertion contradicts the allegations of the complaint, which stated the truck yard was fraudulently included as additional security in the forbearance agreement.

recorded a notice of default. Plaintiffs filed their complaint in this action on April 2, 2008. They sold the cold storage facility on April 15, 2008, for an amount in excess of the balance due on the loan. Defendant filed its cross-complaint for judicial foreclosure of the deeds of trust on June 27, 2008. The record does not reflect when the loan was paid off.

If the parties were returned to the status quo that existed prior to execution of the forbearance agreement, plaintiffs would be in default on their loan and subject to judicial foreclosure or a trustee's sale of the properties then pledged as security. In the absence of the forbearance agreement, the need to pay off the loan would have been even more pressing than it was after execution of the forbearance agreement. Even before the parties entered into the forbearance agreement, plaintiffs intended to sell the cold storage facility to pay off the loan. Thus, plaintiffs' attempt to blame defendant's alleged fraud and the forbearance agreement for their "fire sale" of the cold storage facility is unavailing. Equity would not support plaintiffs' recovery from defendant of damages as a result of plaintiffs selling the property at less than its value in order to pay off their loan.[6]

Plaintiffs also assert they could recover as consequential damages their attorney fees in this action, as well as punitive damages. They have cited no legal authority that would support an award of attorney fees as damages in this action. Punitive damages are not recoverable when no actual damages are awarded. (*Mother Cobb's Chicken Turnovers v. Fox* (1937) 10 Cal.2d 203, 205-206.)

We conclude plaintiffs' cause of action for rescission of the forbearance agreement based on alleged fraud has become moot, in that the contract could not be

---

[6] We note that the record does not suggest defendant received anything from the sale of the cold storage facility other than what it was entitled to both before and after execution of the forbearance agreement: the balance due on the loan plus costs of foreclosure.

24.

effectively rescinded because the parties cannot return the consideration they received in the transaction and plaintiffs have not demonstrated they are entitled to any other relief based on rescission of the contract. Summary judgment of this cause of action was therefore proper.

### 4. Reformation

A contract may be reformed as a remedy for fraud. "When, through fraud … a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." (Civ. Code, § 3399.) This is true whether the contract is executed or executory. (*Merkle v. Merkle* (1927) 85 Cal.App. 87, 110-111.) If plaintiffs prevailed on the reformation cause of action, however, the contract could not be reformed so the parties could perform in accordance with its revised terms, because the parties have already fully performed. A contract may be reformed, then specifically enforced. (*Tomas v. Vaughn* (1944) 63 Cal.App.2d 188, 192 (*Tomas*).) "[W]here through no fault of the plaintiff in equity, specific performance cannot be decreed, the court … will grant, as an alternative, monetary relief, which in an action strictly at law would be by way of damages." (*Ibid*.)

*Tomas* illustrates the type of monetary award that may be made incidental to granting equitable relief. In *Tomas*, the plaintiff entered into a contract to purchase an automobile from the defendant, a used car dealer. (*Tomas, supra,* 63 Cal.App.2d at p. 190.) The plaintiff alleged he agreed to make 18 monthly installment payments of $20 each and a final payment of $95. When the plaintiff signed the contract, the defendant hid the portion actually providing for 24 monthly payments of $20 and a final payment of $95. (*Ibid*.) The defendant later assigned the contract to a third party. The trial court reformed the contract by reducing the final payment to the third party, then entered a monetary award against the defendant equal to the six extra payments. The defendant's assignment of the contract to the third party prevented the trial court from simply

reforming the contract and specifically enforcing it against the defendant. The reviewing court determined the monetary award was proper, because it was "purely incidental to the equitable relief originally sought." (*Id*. at p. 192.) It adjusted the equities between the parties and prevented the third party from suffering any prejudice to the rights it acquired in good faith through assignment of the contract. (*Id*. at p. 193.)

In *Tomas*, the monetary award was incidental to the reformation. Through no fault of Tomas, because of the assignment of his contract, the contract could not simply be reformed and specifically enforced in accordance with the parties' actual agreement. Further, the amount of compensation required to put Tomas in the same position as if the contract had been reformed and enforced was definite and easily calculable. Here, however, plaintiffs' actions contributed to the inability to specifically enforce the agreement as reformed. Additionally, attempting to return plaintiffs to the status quo that existed prior to execution of the forbearance agreement by awarding monetary compensation would result in a speculative monetary award that is not merely incidental to reformation.

Plaintiffs' own evidence demonstrates they intended to sell the cold storage facility to pay off their debt to defendant even prior to entering into the forbearance agreement. They sold the facility thirteen days after filing their complaint, which included a cause of action for reformation. Rather than promptly suing for reformation and following through by enjoining enforcement of the contract as written, obtaining reformation, and performing pursuant to the reformed contract, plaintiffs performed and accepted defendant's performance consistent with the contract as written.

While the court can, in connection with reforming a contract, adjust the performance of the parties to do equity (see *Tomas*, *supra*, 63 Cal.App.2d at pp. 192-193), it cannot award damages based on speculation about what might have happened if the contract had been reformed prior to full performance and if the parties had performed in accordance with the reformed contract. Plaintiffs chose to sell the cold storage facility,

26.

which they contend was not security for the loan prior to execution of the forbearance agreement or part of the property they agreed to pledge as additional security in exchange for the forbearance agreement. They did not choose to sell property they concede was security for the loan prior to the forbearance agreement (a 15-acre ranch and a commercial truck yard) or either of the two ranches they contend were to be the additional security for the forbearance agreement. They cannot now speculate on what would have happened if defendant had performed in accordance with the forbearance agreement as plaintiffs contend it should have been written, and if defendant had attempted to foreclose only on the original security or the two ranches plaintiffs concede were to be additional security under the forbearance agreement.

Plaintiffs assert that, if they prevail on their reformation cause of action, the forbearance agreement would be reformed to reflect that the security for the agreement included only the two ranches, and not the cold storage facility or plaintiffs' residence. Then, they contend, defendant's attempt to foreclose on the cold storage facility and plaintiffs' residence would be a breach of the reformed agreement for which plaintiffs could recover damages. A plaintiff cannot, after the contract is fully performed pursuant to the original terms, obtain reformation in order to create a breach by the other party for which to recover damages. "An executed contract cannot be reformed where the aggrieved party, with knowledge of the facts accepts performance in accordance with the terms of the contract as written." (*Vantress Farms, Inc. v. Sydenstricker* (1970) 11 Cal.App.3d 943, 950-951.)

In their reply brief, plaintiffs also assert that, as an alternative, they had the right to affirm the contract and sue for damages. That claim for damages, however, is exactly what is presented in the first two causes of action of plaintiffs' complaint, which seek damages for fraud and negligent misrepresentation. Those claims are not equitable causes of action, where justifiable reliance on the other party's misrepresentation of the terms of the contract could be established despite the plaintiff's failure to read the

27.

contract. Plaintiffs have cited no authority allowing the more lenient rule to be applied to a legal cause of action for damages. As defendant points out, the cases discussing the more lenient rule have applied it only to equitable claims. Plaintiffs, as appellants, bear the burden of demonstrating prejudicial error. (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.) Because they have not demonstrated that the trial court applied the wrong rule of law to the causes of action for damages for fraud and negligent misrepresentation, they have not met that burden.

We conclude the trial court correctly granted summary judgment on all of plaintiffs' causes of action.

### ***DISPOSITION***

The judgment is affirmed. Defendant is entitled to its costs on appeal.


_____
                                                                HILL, P.J.

WE CONCUR:


_____
LEVY, J.


_____
KANE, J.